## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES,** | : | |
| **Prosecution** | : | |
| | : | **CASE NO.** |
| | : | **3:13-CR-00141 (VLB)** |
| **v.** | : | |
| | : | **MAY 23, 2014** |
| **ELLIS THOMAS,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OF DECISION DENYING DEFENDANT ELLIS THOMAS'S MOTION TO STRIKE PREJUDICIAL SURPLUSAGE AND MOTIONS IN LIMINE [Dkt. Nos. 72, 74, 79, 88, 90, 93, 97]**

Before this Court are seven evidentiary motions filed by the Defendant Ellis Thomas.  For the reasons and subject to the limitations stated below, the  Motion to Strike Prejudicial Surplusage [Dkt. 72], Motion in Limine to Preclude Evidence of Aliases [Dkt. 74], Motion in Limine to Preclude the Introduction of a 911 Recording [Dkt. 79], Motion in Limine to Preclude Identification Testimony and Suppress In-Court Identification [Dkt. 88], Motion in Limine to Preclude the Introduction of Other Act Evidence [Dkt. 90], Motion in Limine to Preclude the Introduction of Any Other Evidence of Prior Misconduct [Dkt. 93], and Motion in Limine to Preclude Evidence of Recorded Conversations [Dkt. 97] are DENIED.

## I.  Background

By an indictment filed July 24, 2013, Defendant is charged with two counts of kidnapping in violation of 18 U.S.C. § 1201(a)(1) & (2), one count of conspiracy to commit kidnapping, one count of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a), two counts of attempt to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a), one count of use of a

firearm in furtherance of crimes of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and one count of conspiracy to use a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(o).  The Indictment alleges that Defendant used a cell phone to lure an individual identified in the Indictment as John Doe 1 to a residence in Hartford, Connecticut for the purpose of purchasing jewelry.  [Indictment ¶ 5(a).]  The Indictment alleges that Defendant and certain co-conspirators not named in the Indictment then kidnapped John Doe 1 and another individual identified in the Indictment as John Doe 2.  [Indictment ¶¶ 1-4.] Defendant then allegedly held John Doe 2 captive in a vehicle parked in Hartford, Connecticut.  [Indictment ¶ 5(c).]  It is further alleged that Defendant's unnamed co-conspirators then drove John Doe 1 to locations in Hartford and East Hartford and ordered John Doe 1 to use his cell phone to arrange a meeting with an individual identified in the Indictment as John Doe 3 for the purpose of robbing John Doe 3 of narcotics and/or narcotics proceeds.  [Indictment ¶¶ 5(d)-(f), 6.]

## II. Motion to Strike Prejudicial Surplusage and Motion in Limine to Exclude Evidence of Aliases at Trial

Pursuant to Federal Rule of Criminal Procedure 7(d), Defendant moves to strike references to his aliases from the Indictment.  [Dkt. 72.]  Defendant seeks an order directing the Government to file a redacted or substitute indictment that does not contain the aliases.  Defendant has also filed a motion in limine to exclude from the trial evidence of the aliases attributed to Defendant in the Indictment for substantially the same reasons set forth in the motion to strike. [Dkt. 74.]

The Indictment attributes two aliases to Defendant: "L" and "Big Homey." Defendant argues that these aliases are prejudicial to the Defendant because they infer that Defendant is engaged in criminal activity and thus undermines the presumption of innocence.  [Dkt. 73 at 1.]  Defendant also argues that there is no evidence that Defendant ever used the aliases, as the witnesses in the grand jury testimony of non-law enforcement witnesses produced by the Government do not state that they know Defendant by either of the aliases.  [Dkt. 73 at 3.]  Further, the alleged kidnapping victims, John Doe 1 and John Doe 2, do not state in their Grand Jury testimony that they know Defendant by the aliases.  [Dkt. 73 at 3.] Defendant further argues that the claimed aliases will not assist the Jury in identifying the Defendant, because the Government does not propose to introduce evidence in which Defendant is identified only by one of the aliases. [Dkt. 73 at 3.]  Finally, Defendant also argues that the introduction of aliases suggests to the Jury that Defendant conceals his true identity or has a need to conceal his true identity, and that this raises an inference that Defendant engages in criminal activities, which shifts the burden of proof to the Defendant.

The Government argues that the aliases are on their face not prejudicial. [Dkt. 77 at 4.]  The Government argues that "L" is simply an abbreviation of Defendant's first name "Ellis", and is thus not prejudicial.  The Government argues that the alias "Big Homey" is not prejudicial because the nickname "Homey" is a term of endearment, and the word "Big" is a reference to the Defendant's physical size.  [Dkt. 77 at 5.]

3

The Government further argues that even if either or both of the aliases could be deemed prejudicial, the aliases should not be stricken because they are relevant to the charges.  [Dkt. 77 at 5.]  The Government anticipates introducing at trial a photograph inscribed with the name "Uncle Big Hommie," and will introduce testimony from a cooperating witness who knows the Defendant as using the aliases.  [Dkt. 77 at 5.]  The Government argues that if Defendant tries to deny or minimize his relationship with the cooperating witness, the witness's familiarity with Defendant's aliases could be probative.  [Dkt. 77 at 5.]  The Government also argues that it is possible that one or more witnesses could refer to Defendant by one of the aliases while testifying at trial.  [Dkt. 77 at 5.]

A. Legal Standard

Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."  "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial."  *United States v. Elson*, 968 F. Supp. 900, 909 (S.D.N.Y. 1997) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)).  "If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken."  *Elson*, 968 F. Supp. At 909 (quoting *Scarpa*, 913 F.2d at 1013).  "[A]liases and nicknames should not be stricken from an Indictment when evidence regarding those aliases or nicknames will be presented to the jury at trial."  *Elson*, 968 F. Supp. At 909 (citations omitted).

4

## B. Analysis

The Court agrees that the alias "L" is not prejudicial, as it appears to be simply an abbreviation of the Defendant's first name.  *Cf. United States v. Machado*, No. 12 Cr. 379, 2013 U.S. Dist. LEXIS 169750, at *17 (S.D.N.Y. Nov. 22, 2013) (noting that the court sees no reason why defendant's alias was inflammatory or prejudicial where the alias apparently derives from defendant's own first name).

Nor has the Defendant introduced evidence suggesting to the Court that the alias "Big Homey" will be perceived by the jury as anything other than an innocuous and colloquial moniker used among acquaintances or persons from the same neighborhood.  Indeed, for at least the last four decades, African American college students have referred to other students from their home state or city as their "home boy," "home girl" or "homey."[1] The terms have been assimilated into mainstream English and become a universal descriptor.  Thus the connotation of homey is not necessarily pejorative.  The precise meaning of the term in the context of this case may render the term prejudicial without being

---

[1] "If they addressed you as 'homey,' and didn't refer to you as a homey or homely person, it's from gang jargon, as I understand. It's short for 'home boy.' It means you are accepted as one of the neighborhood boys or associates thereof. Essentially, you are accepted as one of the 'boys from the 'hood.' If you are called a 'homey' type, it refers to 'down home.' That means a casual, rural presence, or style instead of a stiffer, more formal or more urban one." Comment, Yahoo Answers, https://answers.yahoo.com/question/index?qid=20080507231700AAWCzDA (last visited May 23, 2014). *But see Homeboy Definition*, Learner's Dictionary, http://www.learnersdictionary.com/definition/homeboy (last visited May 23, 2014) ("1: a boy or man from your own neighborhood or hometown, 2: a member of your gang.").

relevant. Accordingly, the Government is instructed to make an offer of proof to establish the relevance of the aliases before introducing the aliases into evidence.

Finally, because the Government represents that the aliases are relevant to the crimes charged, the Court declines to strike them at this time.  The motion to strike is DENIED without prejudice to refiling at trial after the Government has made an offer of proof, establishing the relevance of the aliases.  *See, e.g.*, *United States v. Barrett*, 824 F. Supp. 2d 419, 450 (E.D.N.Y. 2011) (denying motion to strike prejudicial surplusage without prejudice to refilling after the government presents its case at trial).

For the same reasons, the Court DENIES Defendant's Motion in Limine to exclude references to the aliases at trial.  *Cf. United States v. Smith*, No. 3:10-cr-148, 2012 U.S. Dist. LEXIS 84988, *8 (D. Conn. June 19, 2012) (denying defendant's motion to strike references to aliases from the indictment because the government represented that the aliases were relevant to the charges and also denying defendant's motion in limine to exclude the aliases from introduction at trial where they were relevant and probative and not unduly prejudicial).

## III.  Defendant's Motion in Limine to Preclude the Introduction of 911 Recording

Defendant moves to preclude the Government from introducing in its case-in-chief at trial the recording of a November 18, 2008 911 call allegedly made by the individual identified in the Indictment as John Doe 1 (the "911 call"). Defendant argues that the call is hearsay under Federal Rule of Evidence 802, and

is not subject to any exceptions to the bar on hearsay evidence.  [Dkt. 80 at 1.]
Defendant argues that even if the 911 call is not inadmissible hearsay, it is
inadmissible under Federal Rules of Evidence 403 and 404(b).  [Dkt. 80 at 2.]
Defendant reserves his right to use the 911 call for impeachment purposes; the
Defendant asserts that he will ask the Court for a limiting instruction to the Jury if
he introduces the 911 call as a prior inconsistent statement.  [Dkt. 80 at 1 n.1, 3.]

A. Confrontation Clause

Although Defendant has not raised a confrontation clause challenge to the
911 call or the statements made during the call, the Court finds that admitting the
911 call here does not violate the confrontation clause, as the statements made in
the call are not testimonial because they were "made in the course of police
interrogation under circumstances objectively indicating that the primary
purpose of the interrogation is to enable police assistance to meet an ongoing
emergency."  *Davis v. Washington*, 547 U.S. 813, 822 (2006).  It is evident from the
recording itself that it was not the case that there was "no . . . ongoing
emergency" or that "the primary purpose of the interrogation [was] to establish
or prove past events potentially relevant to later criminal prosecution."  *Davis*,
547 U.S. at 822.   John Doe 1's purpose for making the 911 call at issue was to
relay past information to the police so that they could investigate what John Doe
believed to be an on-going crime and extricate his son from the hands of those he
believed to be holding his son against his will.

B. Present Sense Impression and Excited Utterance Exceptions to the Rule
Against Hearsay

7

Hearsay is defined in Federal Rule of Evidence 801(c) as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  The 911 call clearly falls under the definition of hearsay, as it is an out of court statement that the Government seeks to introduce for the truth of the matter. Federal Rule of Evidence 803 offers exceptions to the rule against hearsay, including, among others, present sense impressions and excited utterances. The Government asserts that the 911 call is admissible under both the present sense impression and excited utterance exceptions to the bar on hearsay.  [Dkt. 86 at 3-7.]

A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).  Present sense impression statements "are considered to be trustworthy because they are contemporaneous with the event and its description limits the possibility for intentional deception or failure of memory."  *United States v. Lewis*, 859 F. Supp. 2d 387, 394 (E.D.N.Y. 2012) (citing *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002)).  Both the present sense impression and the excited utterance exceptions to the hearsay rule require that the witness whose testimony is recorded have personally observed the events described. *See Lewis*, 859 F. Supp. 2d at 395 (citations omitted).  Defendant does not assert that John Doe 1's statements in the 911 call were not based on personal observations, nor does the Court see any reason to doubt that John Doe 1's statements on the 911 call arose from his personal observations.

8

An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Fed. R. Evid. 803(2).  "The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability."  *Lewis*, 859 F. Supp. 2d at 394 (quoting *Jones*, 299 F.3d at 112).  "While the hearsay exception for present sense impressions focuses on contemporaneity as the guarantor of reliability, and requires that the hearsay statement 'describe or explain' the contemporaneous event or condition, the excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements - i.e., those that "relate to" the event."  *Lewis*, 859 F. Supp. 2d at 395 (quoting *Jones*, 299 F.3d at 112 n.3).

Defendant argues that the 911 call does not meet the requirements of the present sense impression exception because the call was made 30 to 45 minutes after John Doe 1 escaped from the alleged kidnappers, and is thus not sufficiently contemporaneous with the events described to be a present sense impression. [Dkt. 80 at 4-5.]  Defendant cites to a recording of police radio communications between a police officer and a Hartford emergency dispatcher, a transcript of which is attached as Exhibit B to Defendant's Motion in Limine, in support of his claim about the time that elapsed between the 911 call and the events described therein.  Defendant further argues that the time elapsed makes unreliable the statements in the 911 call, and that comparing the 911 call with John Doe 1's

grand jury testimony shows that John Doe 1 fabricated at least part of the statements on the 911 call.  [Dkt. 4-7.]

The Government argues that Defendant's assertion of the time elapsed is incorrect and based upon a flawed review of the evidence, [Dkt. 86 at 5], and Defendant himself acknowledges in his reply brief that the mention of "30 – 45 minutes" probably refers to a different 911 call, [Dkt. 101 at 2].  The Court agrees that it is not clear from the evidence before the Court that the police officer's statement "he waited like 30 – 45 minutes to call us, . . ." was describing the 911 call that is the subject of this motion.  It could well be describing another call to 911, as the Government asserts.  Nor does the text of the 911 call itself indicate how much time elapsed between John Doe 1's alleged escape from the kidnappers and his call to 911.  Regardless of how much time elapsed between John Doe 1's escape and the 911 call, it is apparent from the statements in the 911 call that John Doe 1 was describing events that were ongoing.  It appears from the text of the call that John Doe 1 believed that the alleged kidnapping of John Doe 2 was ongoing at the time he made the call, and the vast majority of the call appears aimed at providing information necessary for the police to respond to that situation.  Defendant's argument that the 911 call must be excluded from the Government's case in chief because of the time elapsed is thus unpersuasive.

Nor does the Court find persuasive the Defendant's argument that the 911 call is unreliable because John Doe 1 declined to tell the 911 operator about the potential involvement of drugs in the alleged kidnapping, but later gave testimony to the Grand Jury indicating the involvement of drugs in the incident, or the fact

that John Doe 1 appears to have initially given the 911 dispatcher a fake last name.  [Dkt. 80 at 4-6; Dkt. 101 at 3.]  The Court is not convinced that John Doe 1's reluctance to admit involvement in potentially illegal activity to the 911 dispatcher and apparent initial reluctance to give his true name undermine the credibility of the rest of the statements made during the 911 call or indicate that the other statements made on the 911 call were fabricated.

Defendant finally argues that the cadence and tone of John Doe 1's voice during the 911 call show that he had a "cool demeanor" and that therefore the call could not have been an excited utterance.  [Dkt. 80 at 7.]  The Court declines to exclude the 911 call on these grounds as the Defendant cites no authority to support excluding a statement based on a party's subjective interpretation of the cadence and tone of a witness's testimony.  Even if Defendant had supplied such authority, upon its own review of the audio-recording of the 911 call the Court does not agree with the Defendant's subjective conclusion that John Doe 1 displayed a cool demeanor and that he was calm.  On the contrary, the tone, cadence and content of the statements made by John Doe 1 to the police dispatcher together with those he made to a person(s) in the dwelling from which he made the 911 call support the conclusion that at the time of the call John Doe 1 was agitated and operating under the stress and psychological impact of the events which he was relaying and for which he was seeking police assistance.

The Court finds that the 911 call is admissible under both the present sense impression and excited utterance exceptions to the hearsay rule.  This motion is DENIED without prejudice to raising again at trial if other evidence

introduced at trial is materially different from the facts asserted in connection
with the briefing on this motion.

## C.  Federal Rule of Evidence 403

Defendant argues that even if the 911 call is admissible under an exception
to the hearsay rule, it should be excluded pursuant to Federal Rule of Evidence
403. Rule 403 allows a Court to "exclude relevant evidence if its probative value is
substantially outweighed by a danger of one or more of the following: unfair
prejudice, confusing the issues, misleading the jury, undue delay, wasting time,
or needlessly presenting cumulative evidence."  Defendant argues that the 911
call has a very low probative value because the Government intends to call John
Doe 1 and John Doe 2 as witnesses to testify at trial, and that the 911 call will
thus constitute a waste of time, undue delay, needlessly cumulative evidence,
and will confuse the trier of fact about the real issues presented by the evidence.
[Dkt. 80 at 7-8.]  The Government asserts that playing the 911 call will not be a
waste of time or undue delay as it is only 7-8 minutes in length.  [Dkt. 86 at 8.]
The Government also argues that the 911 call has probative value because it is an
immediate firsthand account of the alleged criminal activity, which is particularly
relevant because the alleged criminal activity occurred in November 2008, more
than five-and-a-half years before the trial in this action is expected to take place.
[Dkt. 86 at 8.]  The Court agrees that the 911 call is probative evidence of the
alleged offenses as they were observed by John Doe 1, particularly in light of the
time that has elapsed since the events at issue, and is thus not a waste of time,
unduly burdensome, or needlessly cumulative.  *Cf. United States v. Mejia-Velez*,

855 F. Supp. 607, 615 (E.D.N.Y. 1994) (admitting 911 calls made by individuals who were called as trial witnesses over defendant's challenge under Rule 403 where "the statements contained therein were the most probative evidence available of what those witnesses observed . . . two years prior to their in-court testimony"). The 911 call may also be admissible on redirect examination of John Doe 1 to corroborate his testimony on direct examination should the Defendant seek to impeach him on cross examination.

## D.  Federal Rule of Evidence 404(b)

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However, the Court may admit such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Courts in the Second Circuit "follow[] the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402."  *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (citation omitted).  "Even under this approach, however, district courts should not presume that such evidence is relevant or admissible."  *Curley*, 639 F.3d at 56 (citation omitted).  When reviewing a Court's decision to admit evidence under Rule 404(b), the Second Circuit will consider "whether: (1) the prior crimes evidence was offered for a proper purpose; (2) the evidence was

relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction." *Curley*, 639 F.3d at 57 (quotation omitted).

Defendant argues that the 911 call should be excluded, or at least redacted, to remove a statement from John Doe 1 about the Defendant being on parole. [Dkt. 80 at 8-9; Dkt. 101 at 5-6.] Specifically, John Doe 1 states during the 911 call "[a]s a matter of fact, a guy named Ellis called me, Ellis his name is Ellis he just got out of jail, he's on parole." Defendant argues that this statement should be redacted under Rule 404(b) because the reference to Defendant's past crimes is unfairly prejudicial, and outweighs any probative value of the statement. The Government argues that identity is a central issue in the case, and that as Defendant had in fact been released from jail approximately one month before the alleged events and was on probation, John Doe 1's knowledge that Defendant had recently been released from jail is relevant to establishing Defendant's identity. [Dkt. 86 at 10.] The Government asserts that the statement about parole is relevant because John Doe 1 did not know Defendant's last name, did not know his full address, and a police line-up identification was never conducted. [Dkt. 86 at 9-10.]

Identity is a permissible purpose for admission of evidence under Rule 404(b)(2), and because it appears identity will be an issue in the case, the challenged statement from the 911 call is relevant. Although the fact that Defendant had recently been released from prison could have some prejudicial

effect, the potential prejudice is outweighed by the probative value of establishing John Doe 1's familiarity with one or more of his alleged kidnappers, given that identity may be at issue.  Defendant argues that the Government can establish John Doe 1's familiarity with Defendant without using the challenged statement.  [Dkt. 101 at 5-6.]  The Court finds this argument unpersuasive, as there appears to be very limited identifying information in the 911 call, and thus John Doe 1's statement "Ellis his name is Ellis he just got out of jail, he's on parole" may be probative as to John Doe 1's knowledge of his alleged kidnapper's identity at the time of the call and is not needlessly cumulative.

The Government indicates that it will not oppose an instruction to the jury limiting them to consideration of such evidence only for the purpose of determining the identity of the person named in the 911 call, and the Court will issue such limiting instruction.  The motion is DENIED.

## IV. Defendant's Motion in Limine to Preclude Identification Testimony and Suppress In-Court Identification

Defendant has moved the Court for an order precluding the Government from offering testimony from John Doe 2 regarding a photo line-up identification, precluding law enforcement witnesses from offering testimony regarding John Doe 2's photo line-up identification, and preventing John Doe 2 from making an in-court identification of the Defendant.  [Dkt. 88.]  In response, the Government states that it does not intend to ask John Doe 2 if they can make in-court identification of the Defendant during direct examination, and that they do not intend to offer testimony regarding the photo line-up because the investigating

officer does not recall showing photographs to John Doe 2.  [Dkt. 111 at 1.] As the Government does not intend to offer the evidence Defendant seeks to exclude, the Court DENIES Defendant's motion as moot.

## V. Defendant's Motion in Limine to Preclude the Introduction of Other Act Evidence

Defendant has moved for an order precluding the Government from offering any testimony or documents related to (a) any crimes with which Defendant has been charged elsewhere; (b) crimes for which Defendant has been convicted; and (c) evidence of any "bad acts" or uncharged crimes attributed to Defendant.  Defendant objects specifically to the introduction of evidence regarding a car chase that allegedly occurred on April 16, 2009.

Although the challenged evidence is not before the Court, from the parties' briefing the evidence alleges that on April 16, 2009, the Defendant was seen by Hartford Police Officers Moody and Richter driving a 1998 Volvo C70, that officers knew Defendant based on previous encounters with Defendant, and that the officers knew Defendant was driving with a suspended driver's license.  It is alleged that Defendant then engaged in a high speed pursuit with the police, and was able to evade the police.  The next day, on April 17, 2009, a warrant was issued, and Defendant was arrested.  Defendant asserts that the state entered a nolle on the charges from that arrest, and the charges were later dismissed.  [Dkt. 91 at 4.]  As a result, there is no record of any conviction arising from this arrest, and the Defendant may properly assert under oath that he was never arrested for these charges.  [Dkt. 91 at 4.]

16

Defendant asserts that evidence of this car chase is inadmissible under Federal Rules of Evidence 404(b) and 403.  Defendant argues that the evidence lacks relevance because the Volvo was not registered to Defendant, and thus the fact that he was driving it in April 2009 does not prove that he owned it in November 2008.  [Dkt. 91 at 6.]  Defendant further argues that evidence regarding the car chase would be highly prejudicial because it would insinuate that Defendant has a criminal propensity or character and would undermine the presumption of innocence and impermissibly shift the burden of proof to Defendant.  [Dkt. 91 at 6.]  Finally, Defendant argues that admission of this evidence at trial would needlessly confuse the jury and prolong the trial.  [Dkt. 91 at 6.]

In response, the Government asserts that the only evidence it intends to offer is the observations of Hartford Police Officers Moody and Richter, who will testify that on April 16, 2009, they observed defendant standing next to and then driving a 1998 Volvo C70, in the Enfield Street area of Hartford, Connecticut.  [Dkt. 109 at 5.]  As a result, the Court finds the Defendant's argument that the evidence would be prejudicial to be moot, as the Government does not intend to offer evidence regarding the car chase and subsequent arrest.  Because the Government seeks to offer the challenged evidence to establish ownership of the relevant automobile, the evidence is offered for a permissible purpose under Rule 404(b). *See supra* Part III.D. Further, even given the six month gap between the conduct underlying the charges and the observation of Defendant standing near and driving the relevant automobile, the evidence is relevant as it goes to the

ownership of the relevant automobile.  Because the Government will omit the evidence Defendant challenges as prejudicial, the probative value of the evidence outweighs any prejudice to the Defendant.  Finally, the Court will give a limiting instruction to the jurors instructing them that they are to consider this evidence only for the purpose of determining ownership of the relevant automobile.

Defendant also argues that the evidence should be excluded pursuant to Section (A)(13)[2] of the Standing Order on Discovery appended to the District of Connecticut's Local Rules of Criminal Procedure because the Government did not timely disclose the evidence.  Section (A)(13) requires that the Government disclose "[w]ithin fourteen (14) days from the date of arraignment," "[a]ll information relating to other crimes, wrongs or acts of the defendant that will be offered as evidence by the government at trial pursuant to Federal Rule of Evidence 404(b)."  Defendant asserts that he was provided with this evidence on April 15, 2014, nearly 9 months after Defendant was indicted, and that he was prejudiced as he received insufficient time to investigate the evidence and was not aware of the full spectrum of evidence when considering now-expired plea offers from the Government.  The Government argues in response that the evidence is not 404(b) evidence and is therefore exempted from the Section (A)(13), and that Rule 404(b) itself requires only that the Government "provide reasonable notice" of such evidence.

---

[2] Defendant cites to Section (A)(3) in his memorandum, but the Court believes this to be a typographical error, as the text of the rule cited by Defendant matches that of Section (A)(13).

The Court finds unpersuasive the Government's argument regarding the requirements of Rule 404(b).  Although Rule 404(b) itself does not provide an explicit timeframe for disclosure of 404(b) evidence, it requires "reasonable notice." The judges of the District of Connecticut have defined "reasonable notice" in their Standing Order on Discovery to mean 14 days from the date of arraignment.  If the Government does not learn of the evidence until a later date, a fair reading of the standing order and the ongoing disclosure rule require the Government to give notice within 14 days of its discovery of the evidence.

Even if the evidence were untimely, Defendant provides no details to show that he was actually prejudiced, and cites to no authority for such a draconian remedy.  Defendant asserts that he did not have the benefit of this information while considering past plea offers from the Government, offers that expired before this evidence was provided to Defendant.  However, Defendant does not assert that the disclosure of this information would have changed his response to the plea offers.  Finally, since the motion was filed, the Defendant has had an opportunity to consider this information in formulating a response to a plea offer made by the Government.  After consideration of the information the Defendant chose to persist in his not guilty plea and to proceed with trial.  For the above reasons, Defendant's motion is DENIED.

## VI.  Defendant's Motion in Limine to Preclude the Introduction of Any Other Evidence of Prior Misconduct

Defendant seeks to exclude evidence related to the Defendant's April 29, 2014 arrest and presentment on a new larceny charge arising out of events that

**19**

allegedly occurred on June 5, 2009.  [Dkt. 93.]  The Government apparently disclosed evidence regarding this new larceny charge to Defense counsel on May 1, 2014.  [Dkt. 93 at 1,2, 4.]  Defendant argues that the Government's disclosure of this evidence was untimely, as it should have been disclosed within fourteen days of the Indictment pursuant to Section (A)(13)[3] of the Standing Order on Discovery.  [Dkt. 93 at 5-6.]  According to the Defendant, the arrest warrant and complaint for the new state court larceny charge was authorized on March 14, 2014.  Defendant was apparently then arrested and presented in state court on April 29, 2014, and the Government provided that warrant and complaint to defense counsel in this case on May 1, 2014.  Defendant asserts that "the government had notified counsel that it had additional evidence which it claimed to link the defendant to a particular automobile allegedly involved in the kidnapping" but that "the May 1 email was the first time [defense counsel] received full notice of the nature of the belatedly proffered incident which is alleged to have occurred on June 5, 2009."  [Dkt. 94 at 2.].  However, the Defendant does not say when exactly the government notified defense counsel of the additional evidence.  Nor is it clear from Defendant's motion that the Government was even aware of the evidence as of March 14, 2014, or even on April 29, 2014.  Defendant does not provide sufficient information for the Court to know that the Government was aware of the evidence long enough before

---

[3] Defendant again cites to Section (A)(3) in his memorandum, but the Court again believes this to be a typographical error, as the rule cited by Defendant matches that of Section (A)(13).

disclosure to make the disclosure untimely.  Nor has Defendant shown that he was prejudiced by the timing of the disclosure.

Defendant also asks the Court to bar the Government from presenting at trial "any other evidence of prior misconduct" that has not yet been disclosed to the Defendant.  Although Defendant makes reference to Rule 404(b) in his memorandum of law, he does not state why 404(b) commands the exclusion of this evidence.  [Dkt. 94 at 5.]  Defendant has not shown that the evidence is being offered for an impermissible purpose, or that it is unfairly prejudicial.

Defendant's motion is DENIED insofar as it seeks to exclude the evidence on the grounds of untimeliness, without prejudice to refiling with greater detail on the timing of disclosure.  The Court will defer ruling on whether the evidence should be excluded pursuant to Rule 404(b) until the motion has been refiled and the Government has had a chance to respond.

Finally, Defendant also asks the Court to exclude "any other prior evidence of misconduct" that the Government may have that has not yet been disclosed to Defendant.  The Court is unwilling to take such a draconian measure, and DENIES this request without prejudice to refiling if the Government seeks to introduce any such evidence.

## VII. Defendant's Motion in Limine to Preclude Evidence of Recorded Conversations

Defendant has moved for an order precluding the Government from offering at trial recordings of certain of Defendant's in-person and telephonic conversations recorded while Defendant was confined at the Donald W. Wyatt

Detention Center.  [Dkt. 97.]  In response, the Government represents that it will not offer any of the recorded calls or in-person conversations in its case-in-chief. [Dkt. 110 at 2.]  The Court therefore DENIES Defendant's motion as moot.

<u>CONCLUSION</u>

For the reasons described above, Defendant's motion to strike prejudicial surplusage and motions in limine are all DENIED.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated this 23rd day of May, 2014 at Hartford, Connecticut.